## CALDWELL v. INDIAN TER. ILLUMINATING OIL CO.

No. 29496.   June 25, 1940.

*104 P. 2d 237.*

Sam S. Gill, of Oklahoma City, for plaintiff in error.

W. P. McGinnis and Fred M. Carter, both of Bartlesville, S. H. Riggs, of Tulsa, Donald Prentice, of Bartlesville, Robert R. McCracken, of Oklahoma City, Anglin & Stevenson, of Holdenville, and Archibald Bonds, of Oklahoma City, for defendant in error.

BAYLESS, C. J. R. S. Caldwell appeals from the action of the district court of Oklahoma county sustaining the demurrer of Indian Territory Illuminating Oil Company, a corporation, to his amended petition, and rendering judgment dismissing the action.

The amended petition has attached to it as an exhibit a copy of a deed by R. S. Caldwell and wife to H. V. Foster to the city lots in issue. This deed appears to be the ordinary warranty deed form, but there is included therein a reverter clause reading:

"It is agreed that the premises above described shall revert to grantor upon permanent cessation in the use thereof for oil and gas mining purposes."

The amended petition, omitting certain formal portions, reads:

"That on and prior to the 21st day of August, 1930, the plaintiff was the owner of lots 37 and 38 in block 8, Lawrence Place Addition to Oklahoma City, Oklahoma, and the defendant desiring to secure an oil and gas lease thereon to communitize with other adjacent property, and representing to plaintiff that it desired to use the surface of said property and the house thereon for a period of time of approximately six months, within which to complete the drilling of an oil well, orally stated to plaintiff that if he would sign and ratify a community lease on said lots and release and override royalty, and execute a deed to the surface of said property to H. V. Foster, the then president of defendant company, with clause therein that all the prop-

erty would revert to plaintiff on permanent cessation of use of same for oil and gas purposes, that said Foster would hold title for the plaintiff and defendant until said well was completed; that the consideration for the lease would be $4,000, and the consideration for the deed would be $1 and other considerations, and the other considerations in said deed would be that the house thereon would be taken care of and not damaged, and if the well was not productive of oil and gas, defendant would at once permanently cease using the property for oil and gas purposes and the entire property would revert to plaintiff; that if the well was a producer that the defendant would not use the house further for oil and gas purposes, but such use of said house would immediately and permanently cease as soon as the well was completed, and defendant would at once turn said house back to plaintiff in as good condition as when it received by defendant, usual wear and tear excepted, and would cause said Foster to execute any and all necessary papers to accomplish such purpose and to permit the removal of said house in such good condition from said lots."

Then follows a paragraph wherein it is alleged that plaintiff allowed defendant to remain in possession, and otherwise performed the agreement and executed all of the instruments required of him. We quote the following two paragraphs:

"That thereafter and on the 19th day of February, 1932, and before defendant had surrendered said property back to plaintiff or permitted the removal of the house, one Walker Reeves instituted a suit in the district court of Oklahoma county, Oklahoma, being No. 73010, questioning the titles of both the plaintiff and the said H. V. Foster, and defendant thereupon orally requested that the return of said house and the execution of any necessary papers by said Foster await the final outcome of said litigation, if his title was sustained by the courts, it would at once return to him the house in good condition, usual wear and tear excepted, in accordance with its representations and promises theretofore made, and plaintiff relying upon all such representations consented to such delay. That all such conversations and representations were had with defendant's agent by the name of Mr. Bly. That thereafter the district court of Oklahoma county decided said litigation in favor of the plaintiff herein, and an appeal was taken to the Supreme Court of Oklahoma, and thereafter the said Supreme Court of Oklahoma affirmed the judgment of the said district court, and on the 9th day of April, 1937, its mandate was spread of record in the district court of Oklahoma county, Oklahoma, and the said Walker Reeves was finally adjudicated to have no interest in said property and said litigation was ended. That thereupon and on or about April 9, 1937, plaintiff requested the return of the house from defendant and after a short delay defendant permitted plaintiff to enter upon said premises and to remove said house.

"That while such negotiations were being carried on, and before the execution of said deed, the defendant, already in possession of said property, was constructing a high metal fence around it and was carrying on arrangements for drilling, and had placed heavy oil well machinery in said house and so used same that at the very time when it promised to take good care of said house and to return it to plaintiff in good condition, which promise was made to secure said deed and to continue in possession of said house, and on which promises plaintiff relied, defendant knew that it had already practically wrecked and destroyed the interior of said house, and that because of said wire fence, and the exclusion of plaintiff and others from entrance to an inspection of said property, it knew that the plaintiff was unaware of such state of affairs, and the said defendant fraudulently made said representations and promises to defendant, well knowing at the time it could not and did not intend to keep said promises, and by reason of said false and fraudulent representations and promises, said plaintiff shortly thereafter executed and delivered said deed and ratified said lease, and by reason of defendant's prevailing upon plaintiff to wait for redelivery of the house until the termination of said litigation, defendant successfully and fraudulently concealed said fraudulent intent and acts and the condition of said house from the plaintiff until

in the spring of 1937 when plaintiff finally secured possession of said house and learned of said condition and fraudulent acts and intention of defendant."

Paragraph V contains an itemized statement of the waste committed and an allegation of the damage inflicted. We quote paragraph VI:

"That the defendant fraudulently, wantonly, maliciously and in utter disregard of plaintiff's rights obtained and retained possession and use of said house and property and secured said deed and so damaged said house, and carried off the fixtures, piping and wiring, even ripping the plaster and laths from the walls and ceiling to secure same, and by reason of such wanton waste, destruction and conversion plaintiff is entitled to $1,350 punitive damages."

There are five assignments of error in the petition in error, all directed at the assertion the court erred in sustaining the demurrer and in rendering judgment against plaintiff. Plaintiff prefaces his argument in his brief by saying that the assignments of error may be presented under one head, the court erred in sustaining the demurrer and in entering judgment dismissing the action.

Briefly stated, the argument of plaintiff's brief is a cause of action for damages is stated. The compensatory damages to which plaintiff is entitled are stated. The remainder of the amended petition is devoted to negativing the motion that the cause of action is barred by the statutes of limitations. The argument thereon is that defendant fenced in the property and excluded plaintiff therefrom, and also practiced fraud by inducing plaintiff to let defendant remain in possession for many years after the damage was committed in order to defer the time when its tortious conduct would be discovered.

When a defendant files a general demurrer, it has the legal effect of admitting the truth of all facts well pleaded (Schuman v. Williams, 176 Okla. 420, 57 P. 2d 821, and many other cases), as well as all reasonable inferences to be drawn therefrom to support the facts pleaded (Johansen Bros. v. Bennett, 173 Okla. 608, 49 P. 2d 165, and other cases), and for the purposes of considering the issues raised by the demurrer, all such facts and inferences must be taken as true.

This is the test by which the trial judge and this court are required to judge the amended petition. Does it state facts, from which inferences may be drawn, all of which the defendant admits to be true, sufficient to constitute a cause of action?

We think the allegations of the amended petition are somewhat confusing or contradictory. In paragraph IV, plaintiff alleges that defendant had taken possession of the property while the negotiations between the parties were yet in progress, that it had erected a fence around the property and excluded plaintiff therefrom, and had already "practically wrecked and destroyed the interior" of the house. If this is so, the admitted tortious act was one of trespass and not of waste. This theory seems to be borne out by the allegations in paragraph VI, wherein it is asserted that "the defendant fraudulently, wantonly, maliciously, and in utter disregard of plaintiff's rights, obtained and retained possession and use of said house and property * * * and so damaged said house. * * *"

It is difficult to reconcile these allegations with other allegations in the pleading to the effect that plaintiff contracted to defendant the possession and use of the property by virtue of the deed, and "That said house was in good shape and repair when delivered to defendant * * *"; and the allegations of tortious acts amounting to waste committed while in possession under the deed. See Thompson, Real Property, vol. 1, 847, sec. 750, for a discussion of the difference between trespass and waste.

The rule by which such a pleading is tested is stated to be: If the pleader alleges different rights of recovery and

the question is whether either of said remedies is proper, a general demurrer should be overruled if facts are alleged sufficient to constitute a cause of action for either remedy. Gourley v. Lookabaugh, 48 Okla. 65, 149 P. 1169, and other cases under Pleading, Key No. 205 (2) Am. Dig. West.

If we take the allegations of the trespass as true, and we must since defendant admits their truth by its demurrer, we are of the opinion a cause of action for trespass is stated. Allegations that possession was taken and injuries to the building committed before any legal right to take possession arose are sufficient to state a cause of action for trespass.

The question now presents itself respecting whether the cause of action is barred by the statutes of limitation. The parties do not disagree over the applicable statutes nor the length of time involved. The plaintiff seeks to evade the statutes, and we direct our attention to the exception contended for by it.

Plaintiff contends that where a tortfeasor by affirmative acts and by fraud and artifice conceals his tortious acts, and prevents the discovery thereof within the period of limitations, he is not allowed to take advantage of his own wrong by pleading the statute of limitations to the cause of action. Waugh v. Guthrie, etc., Co., 37 Okla. 239, 131 P. 174; Brookshire v. Burkhart, 141 Okla. 1, 283 P. 571, 67 A.L.R. 1059, and other cases digested under Limitation of Actions, Key No. 104, Am. Dig. (West); 37 C. J. 725, sec. 44; and 17 R.C.L. 852, sec. 213, page 854, sec. 215, page 861, sec. 220, et seq.

In all of these authorities it is plainly stated that there must be actuality to the acts or fraud or artifice before they can be adjudged sufficient to suspend or prevent the running of the statute of limitations. There must be so much substance in them that it can be seen that their effect upon the situation was real.

We think the acts charged herein meet that requirement. Plaintiff alleges that defendant took possession and erected a high metal fence around the property and padlocked the gate and excluded plaintiff therefrom, which prevented him making entrance and inspection. This conduct, followed by the alleged agreements, promises, and inducements to refrain from again entering into possession and discovering the tortious acts of the defendant, are sufficient to constitute a state of facts that would actually conceal from plaintiff the injuries done. to his property, and the cause of action for damages.

Much of the defendant's brief is taken up by its argument that it went into possession of the property by virtue of a general warranty deed containing a reverter clause whereunder it acquired a base or determinable fee and there remained a possibility of a reverter in the plaintiff; and, from this it further argues that as the owner of such an estate in the real property it could not be charged with having committed waste. We assume from this that defendant interprets plaintiff's allegations of injuries done to the property as having been done subsequent to the execution of the deed and to agree therewith, and because thereof interprets the action to be one for waste. The plaintiff does not allege that the injuries were done at different dates, and, of course, makes no effort to segregate those done by trespass and those that might amount to waste, but we are of the opinion that a reasonable interpretation of the particular allegations will admit of assuming that all acts of destruction were committed under the trespass. This interpretation will admit the prosecution of the cause of action for trespass, and likewise will remove the cause of action based on waste.

As we pointed out earlier, the plaintiff's pleadings are somewhat confused and contradictory, but the interpretation we have given to the pleadings allows the plaintiff a cause of action for

trespass, and removes the apparent confusion and contradiction, and eliminates the necessity of discussing the issue of waste.

The judgment is reversed, and the cause is remanded.

WELCH, V. C. J., and RILEY, OSBORN, and HURST, JJ., concur.